## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| GUY M. LACROSSE and JOJEMAR MENDOZA individually, and as representatives of a Class of Participants and Beneficiaries of the Jack Henry & Associates, Inc., Savings/Retirement Plan,<br><br>    Plaintiffs,<br><br>        v.<br><br>JACK HENRY & ASSOCIATES, INC., UNDER 29 U.S.C. § 1132(a)(2)<br><br>        and<br><br>RETIREMENT COMMITTEE OF THE JACK HENRY & ASSOCIATES, INC. 401(K) RETIREMENT SAVINGS PLAN,<br><br>    Defendants. | Case No.: 3:23-cv-05088-SRB |

## SUGGESTIONS IN SUPPORT OF PLAINTIFFS' UNOPPOSED
## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

INTRODUCTION & FACTUAL BACKGROUND ................................................................. 1

I.  THE CLAIMS ........................................................................................................... 1

II.  PROCEDURAL HISTORY ...................................................................................... 2

III.  THE SETTLEMENT ................................................................................................ 3

ARGUMENT ....................................................................................................................... 4

I.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY. ............................................................................ 4

    A.  The Settlement Class Meets the Requirements of Rule 23(a). ....................... 5

    B.  The Settlement Class Meets the Requirements of Rule 23(b)(1). .................. 9

II.  THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS SETTLEMENT…. ................................................................................................. 10

    A.  Adequacy of Representation. ........................................................................ 11

    B.  Arm's Length Negotiations. .......................................................................... 12

    C.  The Relief Provided to the Class is Adequate. ............................................. 12

    D.  The Proposal Treats Class Members Equitably. ........................................... 15

    E.  The 8th Circuit Factors. ................................................................................ 15

III.  THE NOTICE OF PROPOSED SETTLEMENT IS ADEQUATE. ....................... 16

IV.  SERVICE AWARDS AND ATTORNEYS' FEES AND COSTS. ......................... 17

V.  PROPOSED SCHEDULE OF EVENTS. ............................................................... 18

CONCLUSION ................................................................................................................... 18

**CASES**                                                                                                           **PAGE(S)**

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) ................................................................................7

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................4, 5, 8

*In re Aquila ERISA Litig.*,
   237 F.R.D. 202 (W.D. Mo. 2006) ...............................................................5, 6, 10

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*,
   281 F.R.D. 347 (D. Minn. 2012).............................................................................8

*Cleveland v. Whirlpool Corp.*,
   No. 20-cv-1906, 2022 WL 2256353 (D. Minn. June 23, 2022) .............................12

*DeBaere v. Heartland Bank & Trust Co.*,
   No. 2020 CH 04389 (Cook Cty. Cir. Ct. 2023) .....................................................9

*DeBoer v. Mellon Mortg. Co.*,
   64 F.3d 1171 (8th Cir. 1995) ................................................................................7

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1985)............................................................................................16

*Gonzalez v. Webster Servicing LLC*,
   No. 2:22-cv-00034 (E.D. Wis. Jan. 12, 2022) ......................................................9

*Johnson v. Fujitsu Tech. & Bus. Of Am., Inc.*,
   No. 16-cv-03698-NC, 2018 WL 2183253 (N.D. Cal. May 11, 2018)....................13

*Jones v. NovaStar Fin., Inc.*,
   257 F.R.D. 181 (W.D. Mo. 2009) .....................................................................6, 10

*Knight v. Concentrix*,
   No. 3:18-cv-07101 (N.D. Ca. Nov. 21, 2018) .......................................................9

*Krueger v. Ameriprise Financial, Inc.*,
   304 F.R.D. 559 (D. Minn. 2014).............................................................................5

*Lechner v. Mut. of Omaha Ins. Co.*,
   No. 8:18CV22, 2021 WL 424421 (D. Neb. Feb. 8, 2021)....................................14

*Lipari-Williams v. Missouri Gaming Co.*,
   LLC, 339 F.R.D. 515 (W.D. Mo. 2021) ............................................................6, 10

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................5

*Murphy v. Harpstead*,
    No. 16-2623, 2023 WL 4034515 (D. Minn. June 15, 2023)....................11, 15

*Niewinski v. State Farm Life Ins. Co.*,
    No. 23-04159-CV-C-BP, 2024 WL 4902375 (W.D. Mo. Apr. 1, 2024) ..........17, 18

*Paxton v. Union Nat'l Bank*,
    688 F.2d 552 (8th Cir. 1982) ........................................................12

*Pollard v. Remington Arms Co.*,
    LLC, 320 F.R.D. 198 (W.D. Mo. 2017) ...............................................15

*Rawa v. Monsanto Co.*,
    934 F.3d 862 (8th Cir. 2019) ........................................................16

*Rizzo v. Hendrick Auto. Grp. Corp., Inc.*,
    No. 08–00137–CV–W–JTM, 2009 WL 10672255 (W.D. Mo. Mar. 20, 2009) ..........9

*Sims v. BB&T Corp.*,
    1:15-CV-732, 2019 WL 1995314 (M.D.N.C. May 6, 2019) ...........................13

*Tussey v. ABB, Inc.*,
    No. 06-04305-CV-NKL, 2007 WL 4289694 (W.D. Mo. Dec. 3, 2007) ...........6, 7, 10

*Urakhchin v. Allianz Asset Mgmt., of Am., L.P.*,
    No.: 8:15-cv-01614-JLS-JCG, 2018 WL 8334858 (C.D. Cal. July 30, 2018) .......13

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................5

*Wildman v. Am. Century Serv.*,
    LLC, 362 F. Supp. 3d 685 (W.D. Mo. 2019) .........................................16

*Wildman v. Am. Century Serv., LLC*,
    No. 4:16–CV–00737–DGK, 2017 WL 6045487 (W.D. Mo. Dec. 6, 2017) ..............7

*Yarrington v. Solvay Pharm., Inc.*,
    697 F.Supp.2d 1057 (D. Minn. 2010) ................................................17

*In re Zurn Pex Plumbing Prods. Liab. Litig.*,
    644 F.3d 604 (8th Cir. 2011) ........................................................5

**Statutes**

29 U.S.C. § 1109(a) ....................................................................6, 10

iii

29 U.S.C. § 1132(g)(1) ...................................................................................................18

**Other Authorities**

Fed. R. Civ. P. 23(a) ................................................................................................*Passim*

Fed. R. Civ. P. 23(b) ................................................................................................*Passim*

Fed. R. Civ. P. 23(e) ................................................................................................*Passim*

Restatement (Third) of Trusts, § 100 cmt. b(1) .........................................................16

iv

## INTRODUCTION & FACTUAL BACKGROUND

This is a class action in which Plaintiffs LaCrosse and Mendoza allege that Defendants Jack Henry & Associates ("Jack Henry") and the Retirement Committee of the Jack Henry & Associates, Inc. 401(k) Retirement Savings Plan ("Committee") breached their fiduciary duty of prudence under Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, ("ERISA") in two ways.

## I. THE CLAIMS

*First*, as alleged in the operative complaint, Defendants allowed the Jack Henry and Associates, Inc. 401(k) Retirement Savings Plan (the "Jack Henry Plan") to pay excessive Recordkeeping and Administrative Fees ("RKA Fees"). ECF 56 (Third Amended Complaint) ¶¶ 199-219. As a result, Plaintiffs allege that the Jack Henry Plan paid substantially more RKA Fees than the reasonable rates for comparably sized plans offering essentially the same services. From 2017 through 2022, the Jack Henry Plan paid over $2,000,000 in RKA Fees for an average of $78 per participant. ECF 56 ¶¶ 120 & 136.

*Second*, Plaintiffs allege that Defendants breached their fiduciary duty of prudence by offering, steering participants into, and imprudently retaining, the Prudential Guaranteed Income Fund ("Prudential GIF"). ECF 56 ¶¶ 220-31. The Prudential GIF is a stable value fund, which provides guaranteed protection of principal and low, fixed returns. Because funds in the Prudential GIF are held unrestricted in the general account of the insurance carrier (Prudential), it is a relatively risky stable value fund and, consequently, should offer high returns relative to other stable value products. More specifically, the Prudential GIF is subject to the single entity credit risk of Prudential, the issuer of the contract. ECF 56 ¶¶ 161–62. The Prudential GIF, however,

1

provided lower returns than some other stable value funds of comparable or lesser risk. ECF 56 ¶¶ 170–73.

Defendants deny these allegations as well as each of the allegations in the operative complaint.

## II. PROCEDURAL HISTORY

Plaintiff LaCrosse filed his original Class Action Complaint on October 9, 2023, asserting just the RKA fees claim. Plaintiff LaCrosse amended his complaint twice (ECFs 15 and 22), and the Court denied Defendants' Motion to Dismiss the Second Amended Complaint. ECF 35. On July 18, 2024, after the court granted leave to amend (ECF 53), Plaintiffs filed the operative Third Amended Complaint, which added Plaintiff Mendoza as a Party and asserted the claim relating to the Prudential GIF (ECF 56). On August 1, 2024, Defendants filed their operative Answer. ECF 59.

Plaintiffs served 39 requests for production of documents and 9 interrogatories on Defendants. Plaintiffs reviewed over 14,000 pages of documents produced by Defendants. Plaintiffs also subpoenaed, for both documents and testimony, Stonebridge Financial Group, the Plan's investment advisor, which, among other responsibilities, was responsible for analyzing the Plan's recordkeeping fees and advising on retention of the Prudential GIF. Plaintiffs deposed Stonebridge Financial Group on January 13, 2025. Plaintiffs served subpoenas on, and reviewed documents produced by, Empower Annuity Insurance Company of America, which, as the acquirer of Prudential Retirement Services, offered the Prudential GIF. Plaintiffs also served subpoenas on multiple other investment companies, which offered competing stable value products.

2

On December 3, 2024, while discovery was ongoing, the parties engaged in a day long mediation with Frank Neuner of Neuner Mediation & Dispute Resolution. The parties did not reach a settlement at the mediation but agreed to continue their dialogue to see if a negotiated resolution of this matter could be achieved. On January 27, 2025, after further conferrals, the parties reached an agreement in principle to settle this matter for $1.6 million and non-monetary relief in the form of Defendants' agreement to issue requests for proposals relating to RKA services.

After exchanging drafts of a settlement agreement, the parties disagreed on the appropriate scope of the class-wide release. To resolve the dispute, the parties requested a settlement conference with a Magistrate Judge. On July 24, 2025, Magistrate Judge Gaddy conducted a settlement conference, and the parties reached agreement on the final settlement terms.

## III. THE SETTLEMENT

The Settlement Agreement ("SA") filed with the Court, including exhibits, sets forth all of the terms of the Settlement and controls. The Settlement is summarized below.

The Settlement Class is defined as "all persons, except individual Defendants and their immediate family members, who were participants in or beneficiaries of the Plan, at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period." The Class Period is October 9, 2017 through the date the Court enters the Preliminary Approval Order.

In consideration of the dismissal of this action with prejudice, and the granted release, Defendants have agreed to provide a settlement fund of $1,600,000, to be distributed proportionately to Settlement Class Members pursuant to the Plan of Allocation, after payment of any Attorneys' Fees and Costs, Service Awards, and Administrative Expenses (the "Net

Settlement Amount"). SA, Arts. 4-5. There are approximately 8,278 Settlement Class Members, each of whom will receive a share of the Net Settlement Amount, under the Plan of Allocation, that is based on the amount of recordkeeping fees that they incurred during the Class Period and the amount of their investments, if any, in the Prudential GIF. *See* Settlement Agreement, Ex. B. Defendants have also agreed to conduct a request for proposal relating to the Plan's recordkeeping services. Settlement Agreement, Art. 12.

In consideration for the relief provided under the Settlement Agreement, Settlement Class Members (and their respective heirs, beneficiaries, executors, administrators, estates, past and present partners, officers, directors, agents, attorneys, predecessors, successors, and assigns) will be subject to the Settlement Agreement's release and covenant not to sue, which provides for a complete release of all claims asserted in this action or that arise out of the same factual predicate as those claims asserted in this action. Settlement Agreement, Art. 7.

Pursuant to the Settlement Agreement, an Independent Fiduciary will be retained, following an entry of preliminary approval, who shall determine whether to approve and authorize the settlement of the Released Claims on behalf of the Plan. The Independent Fiduciary shall issue a determination letter prior to the Final Approval Hearing. Settlement Agreement, Art. 2.

<u>**ARGUMENT**</u>

## I. THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS FOR SETTLEMENT PURPOSES ONLY.

Plaintiffs seek certification of the Settlement Class for settlement purposes only. Settlement is relative to class certification, but the proposed Settlement Class must still meet the requirements of Rule 23. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997).

> Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management

4

problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial. But other specifications of the Rule—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context.

*Id.* at 620.

Like this matter, class actions alleging ERISA breach of fiduciary duty claims are "particularly appropriate for class certification" because the claims are "brought in a representative capacity on behalf of the plan as a whole." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 142 (S.D.N.Y. 2010). Class certification is appropriate only if, "after a rigorous analysis," the trial court is satisfied that the requirements of Rule 23 have been met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). Every class action must meet the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). This proposed Settlement Class must also meet the requirements of Fed. R. Civ. P. 23(b)(1). The appropriate facts are met and here and the Court should certify the Settlement Class for settlement purposes.

### A.      The Settlement Class Meets the Requirements of Rule 23(a).

#### 1.      The Settlement Class is Numerous.

The Settlement Class is so numerous that joinder is impracticable. Fed. R. Civ. P. 23(a)(1). Here, there are over 8,000 class members. Numerosity is easily satisfied. *See In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006) (certifying ERISA class with over 7,000 members).

#### 2.      Common Questions of Law and Fact Exist.

The claims of each Settlement Class member present common questions of law and fact for which "a prima facie case can be established through common evidence." *See In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 618 (8th Cir. 2011); Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. *Krueger v. Ameriprise Financial, Inc.*, 304 F.R.D. 559, 569 (D. Minn. 2014) (citing *Luiken*

*v. Domino's Pizza, LLC*, 705 F.3d 370, 376 (8th Cir. 2013)). The "claims must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Lipari-Williams v. Missouri Gaming Co.*, LLC, 339 F.R.D. 515, 525 (W.D. Mo. 2021) (quoting *Dukes*, 564 U.S. at 350)). Commonality does not require that every question of law or fact be common to every member of the class and may be satisfied, for example, where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated. *Id.* (quotation omitted).

Common questions of law and fact exist here:

- Whether Defendants are fiduciaries liable for the remedies provided by 29 U.S.C. § 1109(a);

- Whether Defendants breached their fiduciary duties to the Plan;

- What are the losses to the Plan resulting from each alleged breach of fiduciary duty; and

- What Plan-wide equitable and other relief the Court should impose in light of Defendants' alleged breach of duty.

In ERISA litigation, common questions including "whether Defendants acted as fiduciaries, whether they breached their duties of prudence and loyalty, whether they violated ERISA, as well as whether and to what extent the Plan was injured as a result" satisfy this prong of the Rule 23(a) analysis. *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 186 (W.D. Mo. 2009); *see In re Aquila*, 237 F.R.D. at 208 (noting that a defendant's conduct in ERISA breach of fiduciary duty actions is the focus, thereby alleviating commonality concerns among plaintiffs).

> ### 3. *The Claims of the Class Representatives are Typical of the Settlement Class.*

Typicality means that there are "other members of the class who have the same or similar grievances as the plaintiff." *Tussey v. ABB, Inc.*, No. 06-04305-CV-NKL, 2007 WL 4289694, at

*7 (W.D. Mo. Dec. 3, 2007) (quoting *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 830 (8th Cir. 1977)). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff[s]." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Variations between class members and proposed class members will not preclude finding typicality "if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1540 (8th Cir. 1996). This is true even if there are "factual variations in the individual claims." *Id.*

LaCrosse's and Mendoza's claims are typical of the Settlement Class because they were participants in the Plan during the time period at issue, were invested in the Prudential GIF during the time period at issue, and LaCrosse and Mendoza were harmed by Defendants' alleged misconduct like all other Plan participants. Potential differences between Plaintiffs and Settlement Class members like individualized investment strategies and damages do not defeat Plaintiffs' and Settlement Class members' shared interests in establishing Defendants' alleged liability to the Plan. *See Tussey*, 2007 WL 4289694, at *7. Plaintiffs LaCrosse and Mendoza do not have any unique claims against Defendants and share the same claims as the Settlement Class. Therefore, the Court should find typicality met.

4.     *The Class Representatives and Class Counsel Adequately Represent the Settlement Class.*

Rule 23(a)(4) requires class representatives to vigorously prosecute the interests of the class through qualified counsel. *Wildman v. Am. Century Serv., LLC*, No. 4:16–CV–00737–DGK, 2017 WL 6045487, at *5 (W.D. Mo. Dec. 6, 2017) (quotation omitted). To demonstrate adequacy of representation, a plaintiff must show that "(1) the representative and its attorneys are able and

7

willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012). Thus, this inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Plaintiffs LaCrosse and Mendoza do not have interests that conflict with the Settlement Class. Plaintiffs LaCrosse and Mendoza suffered the same alleged injury from Defendants' conduct as the Settlement Class and seek compensation for themselves and the Settlement Class for those alleged injuries. Plaintiffs LaCrosse and Mendoza have diligently participated in the litigation and have adequately represent the interests of the Settlement Class.

Class Counsel have also adequately represented the Settlement Class. DiCello Levitt—a national complex issues and trial firm with 95 lawyers and eight offices across the United States and foreign affiliates in Europe and South America—is qualified to lead this litigation. DiCello Levitt's accomplishments in the product liability and consumer protection arena led to the *National Law Journal* naming DiCello Levitt the 2023 Plaintiff's Law Firm of the Year. DiCello Levitt's lawyers are frequently named lead or co-lead counsel in large, consequential, nationwide litigations, and have also repeatedly triumphed at the appellate level. DiCello Levitt has been recognized by leading industry rankings organizations for its class action success, including *Benchmark Litigation*, *Chambers USA*, and *The Legal 500*.

Johnson Becker is a national plaintiffs' law firm that represents individuals in complex litigation. The lawyers at Johnson Becker have over 100 years of combined litigation and trial experience and have served in numerous leadership committees in some of the largest products

liability and class cases in the country, including multiple multi-district litigation and consolidated state court appointments. Johnson Becker regularly prosecutes class actions as well, having filed a significant number of lawsuits across the country involving thousands of class members. *See e.g., Knight v. Concentrix*, No. 3:18-cv-07101 (N.D. Ca. Nov. 21, 2018) (ECF 204) (resolved nationwide collective action for unpaid wages); *Gonzalez v. Webster Servicing LLC*, No. 2:22-cv-00034 (E.D. Wis. Jan. 12, 2022) (ECF 47) (resolved collective and class action for unpaid wages); *DeBaere v. Heartland Bank & Trust Co.*, No. 2020 CH 04389 (Cook Cty. Cir. Ct. 2023) (resolved class action on behalf of thousands of accountholders).

Plaintiffs LaCrosse and Mendoza and their counsel meet the adequacy requirements of Rule 23(a).

### B. The Settlement Class Meets the Requirements of Rule 23(b)(1).

If the requirements of Rule 23(a) are satisfied, then to certify a class under Rule 23(b)(1), only one of the requirements in Subsections (A) and (B) must be met:

(1) prosecuting separate actions by or against individual class members would create a risk of:

    (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

    (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Subsection (A) attempts to avoid possible prejudice to class action defendants and Subsection (B) is concerned with prejudice to putative class members. *Rizzo v. Hendrick Auto. Grp. Corp., Inc.*, No. 08–00137–CV–W–JTM, 2009 WL 10672255, at *5 (W.D. Mo. Mar. 20,

2009). Here, class certification for settlement purposes is appropriate under Subsection (A) or Subsection (B).

"Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1)." *Tussey*, 2007 WL 4289694, at *8 (citing cases and certifying Rule 23(b)(1)(A) class in ERISA litigation); *In re Aquila*, 237 F.R.D. at 213 (finding class certification under Rule 23(b)(1)(A) appropriate in breach of fiduciary duty ERISA action). Here, inconsistent or varying adjudications would establish incompatible standards of conduct for Defendants concerning their discharge of fiduciary duties to the Plan and personal liability to the Plan under 29 U.S.C. § 1109(a).

Courts also find breach of fiduciary duty claims under ERISA appropriate for class certification under Rule 23(b)(1)(B). *See Lipari-Williams*, 339 F.R.D. at 527 (finding that the plaintiffs' claim for breach of fiduciary duty would likely be dispositive of the claims of other class members); *Jones*, 257 F.R.D. at 193 (certifying ERISA class action under Rule 23(b)(1)(B) and citing cases doing the same). Here, adjudications by individual participants and beneficiaries regarding these alleged breaches of fiduciary duties and remedies for the Plan would, as a practical matter, be dispositive of the interests of the participants and beneficiaries who are not parties to the adjudication, or would substantially impair those participants' and beneficiaries' ability to protect their interests.

The Settlement Class meets the requirements of Rule 23(a) and 23(b)(1)(A) or 23(b)(1)(B) and the Court should grant class certification for settlement purposes.

## II. THE COURT SHOULD PRELIMINARILY APPROVE THE CLASS SETTLEMENT.

The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. Fed. R. Civ. P. 23(e). Before approving a class action settlement that binds class members, a court must (1) direct notice in a reasonable manner to all class members; (2) find the settlement fair, reasonable, and adequate after a hearing; and (3) permit class members to object to the settlement. *Id.* For the reasons stated below, Plaintiffs propose the settlement to be fair, reasonable, and adequate.

A court may find a class action settlement fair, reasonable, and adequate after considering whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of any proposed award of attorney's fees, including timing of payment, and any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(A)–(D).

Prior to the amendment of Rule 23(e) in 2018, the Eighth Circuit created its own list of factors for courts to use when determining whether a class settlement was fair, reasonable, and adequate: (1) "the merits of the plaintiff's case"; (2) "the defendant's financial condition"; (3) "the complexity and expense of further litigation"; and (4) "the amount of opposition to the settlement." *Murphy v. Harpstead*, No. 16-2623 (DWF/LIB), 2023 WL 4034515, at *4 (D. Minn. June 15, 2023) (citing *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988)). All the factors under Rule 23(e)(2) and the Eighth Circuit are met here for preliminary approval.

### A. Adequacy of Representation.

Plaintiffs LaCrosse and Mendoza and Class Counsel adequately represent the Settlement Class. This determination pertains to whether "(1) the class representatives have common interests with members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562–63 (8th Cir. 1982). There are no conflicts of interest between Class Representatives and the Settlement Class nor Class Counsel and the Settlement Class. Plaintiffs are also members of the Settlement Class. Plaintiffs have reviewed the allegations in the Complaint and its amendments, provided information and documents to counsel to assist in furthering the action, conferred with Class Counsel regarding the strengths and weaknesses of the case, and approved the settlement by signing the Settlement Agreement. Moreover, Class Counsel have decades of experience combined in mass tort and collective and class action matters. The Court should find that Plaintiffs LaCrosse and Mendoza and Class Counsel have adequately represented the interests of the Settlement Class.

**B.** **Arm's Length Negotiations.**

This settlement is the result of arm's length negotiations between experienced counsel. There is no evidence of fraud or collusion. *See Cleveland v. Whirlpool Corp.*, No. 20-cv-1906 (WMW/JFD), 2022 WL 2256353, at *5 (D. Minn. June 23, 2022) (finding settlement negotiated at arm's length where "the parties engaged in zealous litigation on the issues, exchanged both formal and informal discovery, and vigorously negotiated the settlement over the course of several months."). Counsel for the Parties vigorously negotiated the terms of the settlement, including multiple discussions of the merits of the case and exchanges of offers after contested litigation. This included a half-day third party mediation, a second full-day third party mediation, and finally, a separate settlement conference with Magistrate Judge Brian Gaddy.

**C.** **The Relief Provided to the Class is Adequate.**

12

This factor takes "into account the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, the terms of any proposed award of attorney's fees, including the timing of payment, and any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C).

The settlement funds attributable to Plaintiff's RKA fees, $800,000, equates to approximately a 26% recovery of maximum calculated damages attributable to Defendants' RKA fees. This is a recovery frequently approved by courts in ERISA litigation. *See Sims v. BB&T Corp.*, 1:15-CV-732, 2019 WL 1995314, at *5 (M.D.N.C. May 6, 2019) (approving ERISA class settlement where recovery was 19% of alleged damages); *Urakhchin v. Allianz Asset Mgmt., of Am., L.P.*, No.: 8:15-cv-01614-JLS-JCG, 2018 WL 8334858, at *4 (C.D. Cal. July 30, 2018) (approving ERISA class settlement where recovery was 17.7% of alleged damages); *Johnson v. Fujitsu Tech. & Bus. Of Am., Inc.*, No. 16-cv-03698-NC, 2018 WL 2183253, at *5 (N.D. Cal. May 11, 2018) (approving ERISA class settlement where recovery was 10% of alleged damages). The other $800,000 in settlement funds will be used to compensate participants in the Prudential GIF. The recoverable damages attributable to this claim are uncertain because a reasonable rate of return for a stable value investment option with the characteristics of the Prudential GIF is highly-contested.

The costs, risks, and delay of trial and appeal support the settlement. The Court set a trial date for April 2026. *See* ECF 77. The factual and legal issues in this dispute would require significant additional commitments of time and resources for the Parties if the case proceeded to trial. The Parties require additional fact discovery, including discovery from nonparties. Further discovery from experts is required. The Parties would both need to engage in pretrial matters such

as meeting, marking, and exchanging exhibits, preparing and submitting pretrial briefs, motions *in limine*, requests to strike, and jury instructions. Accordingly, the potential expense of moving forward with the case in relation to the substantial disputes on liability and damages—after years of contested litigation—weighs in favor of the Court approving the Parties' resolution of this matter.

The method of distributing relief to the Settlement Class is highly effective. Of the over 8,000 Settlement Class members, approximately 85% are active participants in the Plan. This means that the overwhelming majority of Settlement Class members do not have to take any action to receive payment under the settlement. The Settlement Administrator will make a settlement payment to each active Plan participant in their Plan account based on the settlement's Plan of Allocation. Former Plan participants will need to submit a Claim Form to receive payment. The identities of former Plan participants are known and the Settlement Administrator will mail former Plan participants with the Settlement Notice at their last known address. Any residual funds after administration will be paid to the Plan for the benefit of the Plan's participants. Residual funds will not be used to defray any expenses that would otherwise be paid by Defendants or to defray Defendants' fees and costs in connection with this matter.

Class Counsel are requesting attorneys' fees of 1/3 of the Settlement Fund. This amount is commonly approved in ERISA and class action litigation and Class Counsel will address this as part of a separate motion for attorneys' fees and costs. *See Lechner v. Mut. of Omaha Ins. Co.*, No. 8:18CV22, 2021 WL 424421, at *2 (D. Neb. Feb. 8, 2021) (noting "a fee request of one-third of the settlement amount is typical in ERISA class action litigation").

Lastly, besides the Settlement Agreement submitted to the Court, the Parties do not have any other agreements to disclose pursuant to Rule 23(e)(3). The relief provided to the Settlement Class is adequate and should be preliminarily approved.

### D. The Proposal Treats Class Members Equitably.

Each Class member's settlement amount is calculated the same way. The Guaranteed Income Fund amount is calculated by determining the sum of the year-end account balances in the Prudential Guaranteed Income Fund of each Current Participant and Former Participant during the Class Period and dividing that sum by the total sum of year-end asset amounts in the Prudential Guaranteed Income Fund during the Class Period. *See* Plan of Allocation, Exhibit B to the Settlement Agreement ¶ 1.5.2. Similarly, the Record Keeping Fund is calculated by determining the sum of recordkeeping fees for each year the participant was in the Plan during the Class Period and dividing that sum by the total number of recordkeeping fee sums of all participants during the Class Period. *Id.* Thus, each Class member is being treated equitably based on their individual account balances.

### E. The 8th Circuit Factors.

All the additional 8th Circuit factors are satisfied. *See Murphy*, 2023 WL 4034515, at *4 (listing factors as (1) "the merits of the plaintiff's case"; (2) "the defendant's financial condition"; (3) "the complexity and expense of further litigation"; and (4) "the amount of opposition to the settlement."). Three of the four factors are easily disposed of at the preliminary approval stage. Plaintiffs have no concerns regarding Defendants' financial condition, Plaintiffs previously articulated the complexity and expense of further litigation in their Rule 23(e)(2)(C) discussion, and Plaintiffs currently do not have any opposition to the settlement to report. *See Pollard v.*

*Remington Arms Co.*, LLC, 320 F.R.D. 198, 219 (W.D. Mo. 2017) (noting that class actions place an enormous burden of costs and expense upon parties).

The merits of Plaintiffs' case also supports preliminary approval. "The single most important factor in determining whether a settlement is fair, reasonable, and adequate is a balancing of the strength of the plaintiff's case against the terms of the settlement." *Rawa v. Monsanto Co.*, 934 F.3d 862, 868 (8th Cir. 2019) (quoting *Van Horn*, at 607)). Plaintiffs believe in their claims and prevailed in opposing Defendants' motion to dismiss, but significant risk remained regarding Plaintiffs' claims at summary judgment. Defendants have also prevailed in ERISA class actions at-trial. *See Wildman v. Am. Century Serv.*, LLC, 362 F. Supp. 3d 685, 711 (W.D. Mo. 2019) (finding that plaintiffs did not prove by preponderance of evidence that defendants breached their fiduciary duties). If Plaintiffs prevailed on liability, then they would still need to prove damages. *See* Restatement (Third) of Trusts, § 100 cmt. b(1) (determination of losses in breach of fiduciary duty cases is "difficult"). ERISA class actions are not home runs for plaintiffs or defendants when there is a good faith dispute about alleged breaches of fiduciary duties.

## III.     THE NOTICE OF PROPOSED SETTLEMENT IS ADEQUATE.

In order to protect the rights of absent members of a settlement class, a court must provide the best notice practicable to all members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174–75 (1985). Such a notice should define the class, describe clearly the options open to the class members and deadlines for taking action, describe the terms of the proposed settlement, disclose any special benefits provided to class representatives, provide information regarding attorneys' fees, indicate the time and place of the fairness hearing, explain the procedure for distributing settlement funds, provide information that will enable the class members to calculate individual

16

recoveries, and prominently display the address and telephone number of class counsel and the procedure for making inquiries. Manual for Complex Litigation (Fourth) § 21.312 (2004).

The Notice of Pendency of Class Action and Proposed Settlement ("Settlement Notice"), attached as Exhibit A to the Settlement Agreement, satisfies Rule 23(e)(2)(C). The Settlement Notice addresses the concerns detailed in the Manual for Complex Litigation by defining the Settlement Class, informs class members how to receive their settlement payment (active participants do not need to do anything while former participants must submit a claim form), informs class members on how to object to the settlement, identifies the date of the fairness hearing, describes how the settlement pays for service awards and attorneys' fees and costs, prominently displays Class Counsel's contact information, and informs the Class of their right to a copy of the Settlement Agreement and their ability to contact Class Counsel with questions. Lastly, the Parties agree that distribution of the Settlement Notice via U.S. Mail is reasonable and that the Settlement Administrator may identify an updated mailing address for any initial Settlement Notices that are returned as undeliverable. Plaintiffs request that the Court find the Settlement Notice adequate and appropriate under Rule 23(e)(2)(C).

## IV. SERVICE AWARDS AND ATTORNEYS' FEES AND COSTS.

Class Counsel will request final approval of the service awards and the attorneys' fees and costs in conjunction with a motion for final approval. As a preliminary matter, the Court will be able to approve the service awards and attorneys' fees and costs at the final approval stage. The Parties' Settlement Agreement contemplates a service award of $10,000 to each Class Representative. These service awards comport with what courts have awarded in other class litigation. *See Niewinski v. State Farm Life Ins. Co.*, No. 23-04159-CV-C-BP, 2024 WL 4902375, *5 (W.D. Mo. Apr. 1, 2024) (approving service awards of $25,000 each); *Yarrington v. Solvay*

*Pharm., Inc.*, 697 F.Supp.2d 1057, 1069 (D. Minn. 2010) (noting approval of service awards between $5,000 and $15,000).

ERISA contains a fee shifting provision for participants and beneficiaries for "reasonable attorney's fee and costs of action.". *See* 29 U.S.C. § 1132(g)(1). Here, Class Counsel will request an attorney fee equal to 33.33% of the Settlement Fund, which is commonly approved in class action settlements. *See Niewinski*, 2024 WL 4902375, *5 (approving 33.33% attorney fee award in class action settlement).

## V.     PROPOSED SCHEDULE OF EVENTS.

The Court's entry of a Preliminary Approval Order would authorize the sending of the proposed Settlement Notice and schedule a final approval hearing during late-October, or as soon thereafter, to consider whether the Settlement Agreement should be approved as being fair, reasonable, and adequate. Plaintiffs respectfully request that the Preliminary Approval Order set the following deadlines:

| Item | Deadline |
|---|---|
| Deadline to Send Notice. | 14 days after preliminary approval order. |
| Deadline to File Motion for Final Approval, including for Award of Attorneys' Fees and Costs. | 44 days before objection deadline. |
| Deadline for Class members to Object. | 14 days before Final Approval Hearing. |
| Deadline to Respond to Objections. | 7 days before Final Approval Hearing. |

## CONCLUSION

For the foregoing reasons, the Plaintiffs request the Court issue an Order preliminarily approving the Class Action Settlement Agreement.

Dated: August 21, 2025                    Respectfully submitted,

18

*/s/ Daniel R. Ferri*
Daniel R. Ferri
DICELLO LEVITT LLP
Ten North Dearborn St., Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
dferri@dicellolevitt.com

Greg G. Gutzler
DICELLO LEVITT LLP
485 Lexington Avenue, Suite 1001
New York, New York  10017
Telephone:  646-933-1000
ggutzler@dicellolevitt.com

Jacob R. Rusch
JOHNSON BECKER, PLLC
444 Cedar St, Suite 1800
Saint Paul, Minnesota  55101
800-272-6386
jrusch@johnsonbecker.com

**Counsel for Plaintiffs and the Class**